THE C. R. & M. R. R. Co. ET AL. v. HERRING.

SAME v. WOOSTER.

SAME v. LAKE.

SAME v. CUTTER.

SAME v. DUNDON.

SAME v. IDDINGS.

SAME v. BROOKS.

SAME v. BOYD.

SAME v. GREENSTREET.

1. **Public Lands:** GRANT TO RAILROAD: CONSTRUCTION. The Cedar Rapids and Missouri River Railroad Company, to which a grant of lands had been made, was permitted by an act of Congress of June 2, 1864, to modify and change the location of the uncompleted portion of its line, said act providing that the company should "be entitled, for such modified line, to the same lands, and to the same amount of lands per mile, \* \* \* as originally granted to aid in the construction of its main line, subject to the conditions and forfeitures mentioned in the original grant." The line as modified and constructed was shorter by several miles than the one first proposed: *Held* that words "per mile" in the act were words of limitation, and that the company was limited thereby to the same number of acres per mile of constructed road that it would have been entitled to receive under the original grant.

*Appeal from Monona District Court.*

MONDAY, DECEMBER 15.

SUBSTANTIALLY the same questions are involved in all these cases, and they were submitted on a single abstract. The actions are in equity. The object being to have determined conflicting titles to real estate. The plaintiffs claim title under the acts of congress, approved May 15, 1856, and June 2, 1864, and certain legislation of the state granting lands in aid of the construction of railroads. The defendants claim to be purchasers directly from the government, or to have become entitled to the lands under the homestead acts of congress, and all claim to be the holders of patents, or to be entitled

thereto. The lands in controversy are all situate in the even numbered sections. The District Court dismissed the petition on the merits, and thereby in effect confirmed the title of the defendants. The plaintiffs appeal.

*James F. Wilson, I. N. Kidder, Joy & Wright* and *E. S. Bailey*, for appellants.

*Monk & Sellick* and *Platt Smith*, for appellees.

SEEVERS, J.—The act of congress approved May 15, 1856, granted to the State of Iowa to aid in the construction of a **1. PUBLIC lands: grant to railroads: construction.** railroad from Lyons City, northwesterly to a point of intersection with the main line of the Iowa Central Air Line Railroad near Maquoketa, thence along said line as near as practicable to the forty-second parallel across the state to the Missouri river, every alternate section of land designated by odd numbers, for six sections in width on each side of said road as definitely located. If any of said lands had been disposed of by the general government, there was granted in lieu thereof an equal amount designated by odd numbered sections, within fifteen miles of the road as definitely fixed.

The lands in controversy are situate within the fifteen mile limit. In July, 1856, the state granted said lands to the Iowa Central Air Line Company, for the purpose contemplated in the act of congress. Said company failed to construct the road and in March, 1860, the state resumed the grant, and in a few days thereafter regranted said lands to the Cedar Rapids and Missouri River Railroad Company, by whom it will be conceded the road contemplated by the act of congress was constructed, and whatever title or right to said lands vested in said company under said act of congress, the state legislation aforesaid and the construction of the road, now belongs to the plaintiffs. That the lands were granted by congress to aid in the construction of a railroad from the Mississippi to the Missouri river is undoubtedly true. Such a road, however, was not constructed in reliance on the grant. For, at the time the grant to the Air Line Company was resumed by the state, a

railroad had been constructed from Clinton, on the Mississipi river, some two or three miles south of Lyons, City westwardly to Cedar Rapids. When the state made the grant to the plaintiff this fact was recognized, and the state provided that the lands were to be used for, and devoted by the Cedar Rapids Railroad Company to, the building of a railroad from Cedar Rapids or Marion to the Missouri river. This is all the state did, conceding it had the power to divert the lands, so to speak, to the construction of a railroad upon a different route from that mentioned in the act of congress.

The original line, in aid of which the grant was made by congress, was about three hundred and forty-five miles in length, and the road constructed by the plaintiffs is about seventy-five miles shorter than this. Clearly the state did not have the power without the assent of congress to grant the lands in aid of the longer to the shorter road. That is to say, under the act of congress of May 15, 1856, lands could only be drawn for the constructed road, and the state could not by legislation change this result.

Because of this fact, and the necessity, apparent or real, for modifying the line, the act of congress approved June 2d, 1864, was enacted. The congressional policy, so far as this state is concerned, has been uniform in granting lands to aid in the construction of railroads. Without deviation, we believe, such policy has been to grant a certain named and designated quantity of lands per mile of constructed road. The plaintiffs insist this policy and uniformity were departed from in the act of June, 1864, and that they are entitled for constructing a road $271 \frac{6}{10}$ miles long to all the lands that had been previously granted by congress, to aid in the construction of a road 345 miles in length. The material portion of said act is as follows:

"That the Cedar Rapids and Missouri River Railroad Company, a corporation established under the laws of the State of Iowa, and to which the said state granted a portion of the land mentioned in the title of this act, may modify or change the location of the uncompleted portion of its line, as shown by the map thereof, now on file in the General Land Office of the United States, so as to secure a better and more expedi-

tious line to the Missouri river and to a connection with the Iowa branch of the Union Pacific Railroad; and for the purpose of facilitating the more immediate construction of a line of railroads across the State of Iowa, to connect with the Iowa branch of the Union Pacific Railroad Company aforesaid, the said Cedar Rapids and Missouri River Railroad Company is hereby authorized to connect its line by a branch with the line of the Mississippi and Missouri Railroad Company; and the said Cedar Rapids and Missouri River Railroad Company shall be entitled, for such modified line, to the same lands and to the same amount of lands per mile, and for such connecting branch the same amount of lands per mile, as originally granted to aid in the construction of its main line, subject to the conditions and forfeitures mentioned in the original grant."

It will be seen the company was authorized, first, to modify its line so as to secure a better and more expeditious    *    * connection with the Iowa branch of the Union Pacific Railroad, and second, to connect its line by a branch with the Mississippi and Missouri Railroad, for the construction of which it was entitled to receive lands. This branch has not been constructed, and no lands are claimed therefor. We are unable to discover any additional powers than the above, or that there was an additional grant of lands made by that act, or that the act of May 15, 1856, was modified in any respect material to this controversy, unless it is contained in the following language: That said company "shall be entitled for such modified line to the same lands and to the same amount of lands per mile as originally granted in aid of the construction of its main line."

We think the words "per mile" are words of limitation, and control, qualify and restrain the words "same lands" and "same amount of lands," and that the clause in question should be read and construed as if it had been written as follows: "The said company shall be entitled to the same lands per mile and to the same amount of lands per mile as originally granted to aid in the construction of its main line."

Such a reading makes the act consistent with the policy of Congress, which as before said we believe has never been

departed from so far as this State is concerned, in making grants of lands to aid in the construction of railroads, and that is to give so much land per mile of constructed road. No instance has been brought to our attention, and we believe none such exists, where congress has not granted a fixed quantity per mile, or where a gross quantity of land has been granted in aid of a constructed road, and this would be the practical effect if the act of congress of June, 1864, is so construed as to give the Cedar Rapids Company lands for the original line when it constructed only a portion of such line. If the congressional intent had been as claimed by the plaintiffs, it would have been expressed, we think, in clear and unmistakable language, such as all the lands heretofore granted to aid in the construction of the original line.

There are other parts of the act which the plaintiffs insist aid the construction claimed by them. It is not deemed necessary to particularly refer thereto, as in our opinion the intent of congress quite clearly appears when a correct reading of the clause in question is reached. One of the conditions of the grant made by the State was that the Cedar Rapids Company should construct the "Lyons Plug." This was done, and the plaintiffs insist they are entitled to lands therefor. We think not, for the reason no lands were granted to the company for that purpose. Congress in the act of 1864 required said company to construct what may be designated as the Onawa branch; a portion of this, it is said, has been constructed. Conceding this to be true, we do not think the plaintiffs are entitled to lands therefor, because the whole branch or road contemplated by congress has not been constructed. Beside this, if there is any evidence tending to show that lands were ever selected or claimed until now for the construction of such branch, it has escaped our notice.

The next question is whether the plaintiffs have received all the lands to which they are entitled for the modified or constructed line. We incline to think they have not, but the quantity they are entitled to in excess of that received does not exceed five thousand acres, and we think not that much. More lands have been selected than have been certified, and

the former exceeds the quantity the plaintiffs are entitled to. Whether all or any portion of the lands selected will be certified to the defendants by the general government we have no means of knowing, but think it devolved on the plaintiffs to show that the lands selected had been disallowed, abandoned, or at least in some manner released from the claim made thereto, before other lands could be selected in lieu thereof. It is conceded, as we understand, that if the grant can be filled from the odd numbered sections the plaintiffs are not entitled to any lands in even numbered sections, and there is no evidence tending to show that the odd numbered sections within the limits of the grant have been exhausted, and this, we think, the plaintiffs were required to establish before the even numbered sections can be resorted to for the purpose of supplying the deficiency. The result is that the judgment of the District Court must be

AFFIRMED.