The Cedar Rapids & Missouri River R'y Co. v. Jewell.

AFFIRMED.

---

THE CEDAR RAPIDS & MISSOURI RIVER R'Y CO. v. JEWELL.

1. **Title to Land :** RAILROAD INDEMNITY GRANT AS AGAINST HOMESTEAD PATENT. Plaintiff claims the land under an act of congress, allowing it to select, within certain limits, lands to indemnify it for lands to which the title had failed in a prior grant. Defendant claims the land by vir-tue of a patent issued under the homestead laws of the United States, pursuant to an application made subsequent to the passage of the act of congress aforesaid, and he has since been in possession of the land and made valuable improvements thereon. *Held* that, if there is enough of other lands, of which the United States has made no disposition, to fill out plaintiff's indemnity, then plaintiff cannot in equity be allowed to resort to the land in question for that purpose; and the burden of proof being upon plaintiff to show that there is not enough of such other land, and it having failed to do so, the judgment of the district court dismissing plaintiff's petition must be affirmed.

*Appeal from Monona District Court.*

SATURDAY, JUNE 16.

ACTION IN EQUITY. The plaintiffs aver, in substance, that

they are the equitable owners of the southeast quarter of the southwest quarter of section twenty-eight, township eighty-three north, of range forty-five west of the fifth P. M. They aver that they became such owners under an act of congress, approved June 2, 1864, whereby certain lands were granted to aid the Cedar Rapids & Missouri River R'y Co. in the construction of its road; that after they became owners, the defendant wrongfully obtained a patent to the land. They ask that it be decreed that he holds the title in trust for the plaintiffs, and that he be decreed to convey the title to them. The defendant denies that the plaintiffs have any interest in the land. The court dismissed the plaintiffs' petition, and they appeal.

*E. S. Bailey* and *Joy & Wright*, for appellants.

*John S. Monk*, for appellee.

ADAMS, J.—The defendant made an application for the land February 6, 1865, under the homestead law. The patent issued to him was issued under the supposition that he was entitled to it under such law. That he was entitled to it is not disputed, unless The Cedar Rapids & Missouri River R'y Co. had, at the time of the application, February 6, 1865, acquired such interest in the land that it could not at that time properly be deemed subject to entry under the homestead law. The statute referred to as the act of June 2, 1864, is an amendatory act. That portion under which the plaintiffs claim the land in controversy is found in section four, and is in these words: "The secretary of the interior shall reserve and cause to be certified and conveyed to said company from, time to time, as the work progresses on the main line, out of the public lands now belonging to the United States not sold, reserved, or otherwise disposed of, or to which a pre-emption right or homestead settlement has not attached * * * * , within fifteen miles of the original main line, an amount of land equal to that authorized

to be granted to aid in the construction of said road by the act to which this is an amendment." The road referred to as intended to be aided by the original act is that of the Iowa Central Air Line Railroad Company. To aid in the construction of such road, congress had made a grant of lands by an act approved May 15, 1856. By that act, congress had granted "every alternate section of land designated by odd numbers, for six sections in width on each side" of the road. It was foreseen, however, that it would appear upon the location of the road that a portion of the land embraced within the six mile limits had been disposed of. To supply any deficiency, therefore, which might exist, congress made a provision in the same act for the appointment of an agent by the governor of Iowa to select, within fifteen miles of the road nearest the tiers of sections above specified, so much land, in alternate sections or parts of sections designated by odd numbers, as should be equal to such lands sold or otherwise appropriated, or to which pre-emption rights had attached; and it was provided that the lands thus selected should be held in trust for the said Iowa Central Air Line Company. Afterwards that company located its road, but failed to construct it, and having failed to construct it, the state of Iowa resumed the grant, and conferred the lands upon The Cedar Rapids & Missouri River R'y Co. At the same time, or soon afterward, it was discovered that there was not sufficient vacant land in the alternate sections designated by odd numbers, within fifteen miles, to be equivalent to six sections for each mile of road. Congress, accordingly, passed another act to supply the deficiency, to-wit; the act in question, approved June 2, 1864, granting to The Cedar Rapids & Missouri River R'y Co., for that purpose, all the land within fifteen miles. The lands thus granted outside of the six mile limit have usually been denominated lieu lands, or indemnity lands. The land in question is contained in an even numbered section, and is between the six mile and fifteen mile limit. It is, therefore, a part of the so-called indemnity lands. So far there is no dispute

The counsel for the respective parties have discussed with great learning and ability the nature of the right which the railroad company acquired in the land in question by the passage of the act. We do not care to go into a consideration of this question. The company, doubtless, as against the United States, acquired, upon the construction of the road, the right to select and claim the land as a part of the intended indemnity, if the deficiency was such as to justify it. What right the company acquired previous to selection as against the defendant, a homestead settler, is a question which presents no little embarrassment, and upon which there is not perhaps, entire harmony in the adjudications. As to this we are not at present entirely agreed. For the purposes of the opinion, it may be conceded that the plaintiff would be entitled to resort to this land, if it were necessary to fill the required indemnity. But it will not be denied that, if the indemnity has been filled, the interest in the land which the plaintiff may have had prior thereto would be extinguished. As to whether it has been filled, the parties differ widely. They differ, also, as to who has the burden of proof upon such questions.

As to the amount of land to which the railroad company became entitled, it is sufficient for us to say that we held in the case of the same plaintiffs against Herring, 52 Iowa, 687, that the length of road constructed was two hundred and seventy-one and six-tenths miles; and it is conceded that the evidence in this case as to the length of road is the same as in that case. The amount intended to be granted to aid in the construction was six sections per mile. If we are correct as to the length of the road, the amount of the grant would be one thousand six hundred and twenty-nine and six-tenths square miles, or one million forty-two thousand nine hundred and forty-four acres. There has been certified to the company one million one hundred and forty-four thousand one hundred and fifty-four acres. In addition thereto, the company has selected and made claim to the balance of the in-

demnity lands, including the land in question, being about forty-one thousand acres more. The plaintiffs contend, however, that they are still short. They contend that from the lands certified there must be deducted one hundred and ninety-four thousand two hundred and seventy-six acres on account of a failure of title. If they are correct in regard to the amount that should be deducted, it will be seen that there would be, as claimed, a deficiency.

We have to say, however, that we think that the deduction claimed is too large by at least the amount of seventy-six thousand eight hundred acres, and that the deficiency, if any, in the lands certified, to be made up from the lands uncertified, does not, in any event, much exceed seventeen thousand acres. If we are correct in this, then the forty-one thousand acres selected and claimed is more than the plaintiffs are entitled to by nearly twenty-four thousand acres.

In respect to the claimed deductions, we shall examine but one item, and that is the item of one hundred and twenty sections, or seventy-six thousand eight hundred acres, which it is said, went to the original company, The Iowa Central Air Line R'y Co. In the examination of this item, we shall not stop to inquire whether any part of that land inured to the benefit of the plaintiffs, as the defendant claims, because, in the view which we have taken of the case, such inquiry is not material. The question, we think, must turn upon the construction which should be given to the act of congress under which the plaintiffs claim.

These lands were originally granted to the Air Line Company, and the defendant's position is that, this being so, they must be taken to be a part of the grant of six sections per mile made to the Cedar Rapids & Missouri River R'y Co., and that this appears from the language used in the grant. The defendant's position, it appears to us, is sound. The provision in the act is that "The Cedar Rapids & Missouri River R'y Co. shall be entitled . *   *   *   * to the same lands, and the same amount of lands per mile,   *

\*   \*   \*   \*   as originally granted." The location of a part of the road by the Air Line Company had rendered the one hundred and twenty sections in question specific. In making a grant of specific lands, or lands in place, it must, of course, have been assumed that it had the right to make such grant, and that the title passed. In the face of this assumption, it appears to us that we cannot say that congress had in mind to provide indemnity against a failure of title.

There is a sharp distinction to be made between indemnity against a failure of title to specific lands, or lands in place, and indemnity against a failure of quantity, where a grant is made of mere quantity, and the lands are not in place. The indemnity in the latter case consists of the mere right to select secondarily from larger limits, if the quantity intended to be granted is not first found within the narrower limits. We know that this kind of indemnity was intended; we have no reason to think that the other was. It appears to us that congress assumed that the grant of lands in place, together with the grant by quantity within the six miles limit, with indemnity for deficiency in quantity, would make six sections per mile, and did not provide for any further contingency.

It is true, we must assume that congress supposed that the company needed to be aided to the extent of six sections per mile. But we do not regard this assumption as of much importance. It would not justify us in so construing the act as to provide for a contingency which congress manifestly did not contemplate. A part of its grant proves to be ineffectual. No one would claim that congress understood that it was doing an ineffectual thing, and, in the same act, provided indemnity therefor.

If, then, congress did not have in mind any provision of indemnity for these lands, we cannot hold that any was made. Under this view, the one hundred and twenty sections cannot properly be deducted from the amount certified; and the deficiency to be made up out of other lands does not much exceed seventeen thousand acres. To supply this deficiency

would not, so far as the evidence shows, exhaust the indemnity lands, and the question is, whether the plaintiffs can, under the evidence, be allowed to resort to the defendant's land.

This action is in equity, and the plaintiffs can be allowed to resort to the defendant's land only in case they have shown a superior equity.

The defendant, though a homestead settler, sustains the same relation to the land that he would if he derived title from the same source as an ordinary purchaser. He holds a patent, and under it he has occupied the land for many years, making valuable and somewhat expensive improvements, year by year. Prior to making of most of these improvements, there were certified to the railroad company lands enough to fill the required indemnity, and more than one hundred thousand acres besides. Under the act in question, it was made the duty of the secretary of the interior to reserve and certify to the company the land necessary to fill the indemnity. Now, while it may be that the land formally reserved and certified may, by reason of the failure of title to part thereof, be insufficient, and a resort to other indemnity land necessary, it appears to us that, under the circumstances, if there is enough of such other land, of which the United States has never made any disposition, to supply the deficiency, that should be deemed reserved; and that the burden is upon the plaintiffs to show that there is not enough of such land. This was held, in substance, in *Railroad Company v. Herring*, above cited; and we see no reason to depart from the ruling. It is not shown that the indemnity cannot be filled without resorting to the defendant's land.

Whether, if it could not be filled without resorting to the defendant's land, we should be justified, in view of the circumstances above set forth, in holding for the plaintiffs we do not determine. It is not necessary to determine that question. For the reasons assigned, we think that the judgment must be

AFFIRMED.